# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**AUSTIN CLARY,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　　**Case No:   6:13-cv-90-Orl-31KRS**

**ARMOR CORRECTIONAL HEALTH
SERVICES, INC. and BREVARD
COUNTY SHERIFF,**

      **Defendants.**

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 36) filed by the Brevard County Sheriff, Wayne Ivey (the "Sheriff"), and the response in opposition (Doc. 40) filed by the Plaintiff, Austin Clary ("Clary").

    **I**　　**Background**

According to the allegations of the Second Amended Complaint (Doc. 34), which are accepted in pertinent part as true for purposes of resolving the instant motion, Clary was arrested and taken to the Brevard County Jail on November 24, 2010 on charges of driving under the influence and resisting arrest.  (Doc. 34 at 2).  Defendant Ivey, who has been sued in his official capacity as the Sheriff of Brevard County, is responsible for operating the Brevard County Jail.  (Doc. 34 at 1).  Defendant Armor Correctional Health Services, Inc. ("Armor Health") is a private corporation that provides medical services to jail inmates.  (Doc. 34 at 2).

At the time of his arrest, Clary suffered from "Hypo Kalemic Periodic Paralysis," a condition that requires him to take daily medication or suffer paralysis, among other potentially serious medical issues.  (Doc. 34 at 2).  Upon his arrest, Clary and some of his family members

informed various jail personnel of Clary's condition; despite this, he was not given his required medication.  (Doc. 34 at 2-3).

On the morning of November 25, 2010, Clary woke up partially paralyzed, and his condition worsened as the day progressed.  (Doc. 34 at 3-4).  Clary repeatedly requested medical treatment, but the jail personnel either ignored him or told him they thought he was faking; they refused to allow him to see medical personnel or to provide treatment.  (Doc. 34 at 4).

He was given a wheelchair to make an appearance in front of a judge.  (Doc. 34 at 4).  Upon Clary's return from that appearance, he was not assisted from the wheelchair but was instead "callously allowed to fall out of his wheelchair onto the cell floor, where he was then left to lie … for the remainder of the time he was in the Jail."  (Doc. 34 at 4).  As he lay on the jail floor, he heard employees of the Defendants outside the cell laughing at him and calling out to him in derogatory terms.  (Doc. 34 at 5).

On the afternoon of November 25, 2010, Clary was told that he had been released from the jail.  (Doc. 34 at 5).  At that point he was still on the floor, paralyzed.  (Doc. 34 at 5).  In a whisper, he told the guards he could not move.  (Doc. 34 at 5).  The guards laughed at him.  (Doc. 34 at 5).  One female guard told him, "I bet you would move if I stepped on your foot." then kicked him in the foot.  (Doc. 34 at 5).

Eventually, an ambulance was called for Clary.  (Doc. 34 at 6).  Upon its arrival, Clary overheard guards telling the paramedics that Clary was faking his condition.  (Doc. 34 at 6).  Clary was transported to a hospital, where doctors discovered that his potassium levels had dropped to near-fatal levels.  (Doc. 34 at 6).  Clary spent two days receiving treatment in the hospital's Intensive Care Unit before he recovered.  (Doc. 34 at 6).

In the Second Amended Complaint, Clary asserts five claims against the Sheriff: a Section 1983 claim for deliberate indifference to serious medical needs (Count I); negligent infliction of emotional distress (Count II); negligent training (Count III); negligent supervision (Count IV); and negligent retention (Count V).

**II.     Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).   The Court must also limit its consideration to the pleadings and any exhibits attached thereto.   FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level,   *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.    *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.    Analysis**

A. Section 1983 claim for deliberate indifference to serious medical needs

A claim for relief under 42 U.S.C. §1983 requires that the plaintiff allege the deprivation of "an actual constitutional right".  *McElligott v.* Foley, 182 F.3d 1248, 1254 (11th Cir. 1999). Pretrial detainees have a Fourteenth Amendment due process right to receive medical treatment for illness and injuries.  *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005).   To establish a defendant's deliberate indifference for purposes of 42 U.S.C. § 1983, the plaintiff must show that the defendant had subjective knowledge of a risk of serious harm and disregarded that risk by way of conduct that is more than mere negligence. *Id.* at 1115.

In Count I, as set forth above, the Plaintiff has adequately alleged that jail employees were aware of his medical condition and consequent risk of harm, and that their disregard of that risk was more than merely negligent.   However, the Sheriff cannot be held vicariously liable under Section 1983.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).   Rather, the plaintiff must show that a custom or policy of the Sheriff was the moving

force behind the violation.  *Id.* at 694-95.   As to this issue, the Second Amended Complaint is entirely devoid of factual allegations, consisting entirely of conclusory assertions.   For example, the Plaintiff alleges that "Defendants' denial of medical care for Mr. Clary is due to Defendants' policy or custom to permit, perpetrate, condone, and/or perpetuate the violation of Mr. Clary's right to medical care for serious medical needs."   (Doc. 34 at 8).   Similarly, the Plaintiff alleges that "Defendants' denial of medical care for Mr. Clary is due to Defendants' policy or custom of deliberate indifference to Mr. Clary's serious medical needs and to Mr. Clary's right to due process."   (Doc. 34 at 8).   Count I includes additional allegations along these lines, some framed in terms of delegation of authority by policymakers or subsequent ratification of unconstitutional acts, others describing deliberate indifference to a need for training or supervision of jail employees.   (Doc. 34 at 7-8).   All of the allegations are devoid of factual allegations sufficient to sustain a policy or practice claim under Section 1983.   Accordingly, Count I will be dismissed without prejudice as to the Sheriff.

    B.  <u>Claim for negligent infliction of emotional distress</u>

In some situations, Florida law allows plaintiffs to recover for mental distress and anxiety resulting from the negligent actions of another.   The elements of the tort of negligent infliction of emotional distress vary depending on whether the plaintiff has suffered a physical impact from an external force:

> If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself.   If, however, the plaintiff has not suffered an impact, the complained-of mental distress must be manifested by physical injury, the plaintiff must be involved in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment within a short time of the incident.

*Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517 (Fla. 3d DCA 1985) (internal quotations omitted).

The Sheriff argues that Plaintiff's claim in Count II for negligent infliction of emotional distress should be dismissed because it is based on intentional conduct, rather than negligence. More particularly, in this count the Plaintiff alleges that jail employees "negligently inflicted physical impact on Mr. Clary by dumping him out of his wheelchair and by kicking his foot."[1] (Doc. 34 at 9). The Sheriff argues that dumping and kicking are intentional acts, while negligent impact is required to sustain a claim for negligent infliction of emotional distress.

The Sheriff points to no case in which a court has held that intentional impacts are necessarily insufficient to sustain a cause of action for negligent infliction of emotional distress. The Court's review of the applicable case law suggests no such distinction exists. For example, in *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007), the Florida Supreme Court made no reference to negligence in its definition of the impact rule:

> The impact rule is the rule of law followed in Florida applicable to cases in which the plaintiff claims mental or emotional damages but has not sustained any physical impact or contact, unless the claim falls within one of the recognized exceptions to the rule. When an impact or touching has occurred the rule has no application.

In *Willis,* a Holiday Inn guest was robbed after being directed by a security guard to park across the street from the hotel and assured that it would be safe to do so. (*Id.* At 848). The impacts at issue in *Willis* were clearly intentional: The robber placed a gun against the plaintiff's forehead

---

[1] In the quoted passage, Clary attributes this conduct to the Sheriff himself. (Doc. 34 at 9). Elsewhere in the Second Amended Complaint, however, Clary asserts that jail employees, rather than the Sheriff, were the ones responsible. As Clary never mentions encountering the Sheriff in person at the jail, it appears that this reference to the Sheriff was a typographical error, and that Clary intended to assert in this count that the Sheriff should be held responsible for harms inflicted his employees rather than something he personally accomplished. For purposes of resolving this motion, the Court will assume this to be the case.

as she exited her vehicle, then forced her to lift her clothing so he could pat down her exposed body. *Id.* At 849. Nonetheless, the *Willis* Court held that these acts satisfied the impact rule. (*Id.* At 851). In the absence of precedent holding that only negligently inflicted impacts may satisfy the impact rule, the instant motion will be denied as to Count II.

    C. <u>Negligent training, supervision, and retention claims</u>

To state a claim under Florida law for negligent hiring, supervision and/or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees. *Spadaro v. City of Miramar*, 855 F.Supp.2d 1317, 1338 (S.D.Fla. 2012) (citing *Magill v. Bartlett Towing, Inc.*, 35 So.3d 1017, 1020 (Fla. 5th DCA 2010)). Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001). For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer. *Spadaro* at 1338. Accordingly, to state a claim, the plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to the plaintiff. *Id*. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage. *Id.* (citing *Hemmings v. Jenne*, No. 10–61126–CIV, 2010 WL 4005333, at *5 (S.D.Fla. Oct. 12, 2010)).

In the instant case, Clary has alleged facts establishing that during the events at issue he was in the custody of the police, who therefore owed him a duty of care. *See*, *e.g.*, *Moore v. State, Florida Fish and Wildlife Conservation Comm'n*, 861 So. 2d 1251, 1253 (Fla. 1st DCA 2003) ("Thus, once appellant had been restrained of his liberty, he was in the 'foreseeable zone of risk' [and] a duty of care was owed to the appellant."). However, Clary has alleged no facts that

would establish that the Sheriff breached this duty of care. Clary does not identify any of the jail employees who mistreated him or provide any details as to how the Sheriff fell short in regard to those employees' training, supervision, or retention. Instead, Clary simply recites the elements of the various negligence claims he now asserts. For example, in Count III, his negligent training claim, Clary realleges much of his narrative and then alleges that

> 59. The Sheriff had a duty to train its employees to prevent the type of loss, injury, and damage suffered by Mr. Clary in situations like those described in the paragraphs realleged in this Count.
>
> 60. Upon information and belief, the evidence is likely to show that the Sheriff breached that duty to Plaintiff by failing to adequately train its employees to handle the foreseeable situations present in the instant case as alleged in those paragraphs.
>
> 61. The Sheriff's breach of its duty to train its employees was the proximate cause of loss, injury, and damage to Mr. Clary.

(Doc. 34 at 10). Such conclusory allegations are insufficient to state a claim, and the allegations in Count IV and Count V are no better. Counts III through V will be dismissed without prejudice.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 36) is **GRANTED IN PART AND DENIED IN PART** as set forth above. If the Plaintiff wishes to file an amended complaint, he must do so on or before February 27, 2014.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 7, 2014.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

- 8 -

Counsel of Record
Unrepresented Party